# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JUANITA TUCKER, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No: _____<br>) |
| MAXIMUS, INC. and TRIWEST<br>HEALTHCARE ALLIANCE CORP. | ) **JURY TRIAL DEMANDED**<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT

COMES NOW, Plaintiff Juanita Tucker, by and through undersigned counsel, and for her Complaint against Defendant Maximus, Inc. ("Maximus") and TriWest Healthcare Alliance Corp. ("TriWest"), respectfully states and alleges as follows:

### I. NATURE OF THE ACTION

1. This is an action for employment discrimination, wrongful discharge, and retaliation brought to secure legal and equitable relief for injuries Plaintiff sustained as a result of Defendant's discrimination in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.* ("Title VII") for gender discrimination, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

2. Defendants Maximus, Inc. ("Maximus") and TriWest Healthcare Alliance Corp. ("TriWest") unlawfully discriminated and retaliated against Plaintiff based on her gender, age, and disability, creating an intimidating, offensive, and hostile work environment, and affecting the terms and conditions of her employment. When Plaintiff reported this discrimination and harassment, Defendants retaliated against her by mocking her and by ultimately terminating

Page **1** of **17**

Case 4:20-cv-00902-DGK   Document 1   Filed 11/11/20   Page 1 of 17

Plaintiff's employment.

3. Plaintiff seeks compensatory, liquidated and punitive damages, as well as reasonable attorneys' fees and costs, as remedies for Defendants' violation of her rights.

## II. PARTIES

4. Plaintiff Juanita Tucker is a citizen of Missouri who worked for Maximus, Inc. in Kansas City, Missouri as an Operations Supervisor from June 2019 to November 2019.

5. Defendant Maximus Inc. is a Virginia corporation with its corporate headquarters located at 1891 Metro Center Drive, Reston, VA 20190.

6. Defendant TriWest Healthcare Alliance Corp. is an Arizona corporation with its principal place of business located at 15810 N. 28th Ave., Phoenix, AZ 85053.

7. At all times relevant herein, both Defendants had at least 15 employees, and were therefore an "employer" within the meaning of Title VII, the ADEA, and the ADA.

8. Maximus and TriWest are corporations and can only act through their officers and employees, and the conduct of an officer or employee acting within the scope of his or her employment or authority is the conduct of the corporation.

9. Defendants are liable for the acts of its officers and employees, including, but not limited to, Daniel Thomas, Plaintiff's manager Anita Thomas, and site manager George Reitz.

10. Plaintiff is informed, believes, and thereon alleges that all times relevant herein, Mr. Thomas, Mrs. Thomas, and Mr. Reitz were responsible for the sex, age, and disability discrimination, as well as the retaliation, alleged in this Complaint. Notably, Mrs. Thomas and Mr. Reitz were managers for Maximus.

11. Mrs. Thomas and Mr. Reitz had supervisory authority over Plaintiff, and she is informed, believes, and thereon alleges that at all times relevant herein, Mrs. Thomas and Mr.

Reitz made decisions affecting the terms and conditions of her employment.

### III. JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331, as this case involves questions of federal law.

13. This Court is a proper venue under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendant is subject to this Court's personal jurisdiction by maintaining facilities and business operations in this District, and because the events and unlawful employment practices giving rise to this action occurred in this District.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") pursuant to 42 U.S.C. § 2000e-5(b). The EEOC assigned Plaintiff's Charge of Discrimination against Maximus a charge number of 563-2020-01490. A copy of her Charge of Discrimination against Maximus is attached hereto as Exhibit 1. The EEOC assigned Plaintiff's Charge of Discrimination against TriWest a charge number of 563-2020-01491. A copy of her Charge of Discrimination against TriWest is attached hereto as Exhibit 2.

15. On or around August 19, 2020, the EEOC issued Plaintiff a Notice of Right to Sue Maximus, a copy of which is attached hereto as Exhibit 3. On that same day, the EEOC issued Plaintiff a Notice of Right to Sue TriWest, a copy of which is attached hereto as Exhibit 4.

16. Plaintiff has complied with all administrative prerequisites to bringing this lawsuit and has timely filed this action.

### V. FACTUAL BACKGROUND

17. Defendants hired Plaintiff, a female, on or about June 24, 2019, when she was 46 years of age. As of the date of this filing, she is 47 years old. Plaintiff suffers from post-traumatic

Page **3** of **17**

Case 4:20-cv-00902-DGK   Document 1   Filed 11/11/20   Page 3 of 17

stress disorder ("PTSD"), anxiety, and depression.

18. Plaintiff worked for Maximus from June 24, 2019 to November 1, 2019 as an Operations Supervisor. In this capacity, Plaintiff supervised agents in a call center that connects military veterans with federal benefits.

19. At all times relevant herein, Maximus was a subcontractor of TriWest Healthcare Alliance, which is an organization that partners with the Department of Veteran's Affairs to provide health care to veterans. TriWest Healthcare Alliance contracted with Maximus to connect military veterans with federal benefits.

20. At all times alleged herein, Maximus and TriWest Healthcare Alliance acted in concert and for the benefit of one another. TriWest ratified any and all misconduct committed by Maximus and gave input on policies, procedures, and enforcement.

21. Plaintiff's salary was $43,000 a year, with a 6-8% raise given annually, and a 2.5% bonus awarded every January. Plaintiff also received health, dental, vision, and life insurance.

22. Throughout Plaintiff's employment with Maximus and TriWest, Plaintiff was sexually harassed by an agent, Daniel Thomas. Mr. Thomas called Plaintiff names such as "sexy" and "fly" and did not cease this activity, even after Plaintiff's verbal warnings.

23. Mr. Thomas was part of a culture at Maximus and TriWest that created an offensive and hostile work environment toward women.

24. Mr. Thomas also sexually harassed other women at Maximus and TriWest by calling them names such as "sexy" and "beautiful." Complaints from these women to Plaintiff's manager, Anita Thomas, were not properly received.

25. On or about October 28, 2019, Mr. Thomas came up behind Plaintiff and blew down her neck.

26. Plaintiff complained to her manager, Anita Thomas, about Mr. Thomas' behavior, who told Plaintiff not to reprimand Mr. Thomas, but rather let Mrs. Thomas deal with the situation.

27. Mr. Thomas faced no disciplinary actions for his behavior.

28. Unbeknownst to Plaintiff at the time of making the complaint, Anita Thomas is Daniel Thomas' mother. Anita Thomas shielded her son from any consequences from his harassing and discriminatory behavior.

29. On October 30, 2019, Plaintiff sent a request to George Reitz and Maribel Guerrera to be moved under a different manager. Neither Mr. Reitz nor Ms. Guerrera responded to this request.

30. Even after Plaintiff complained to Ms. Thomas, Mr. Thomas' sexual harassment continued. On several occasions after Plaintiff's complaint, Mr. Thomas would walk by Plaintiff and wink at her.

31. Men generally received more favorable treatment than women while employed with Maximus and TriWest. Men were allowed time off for family emergencies without any supervisors questioning their requests, while women were not allowed time off for family emergencies and had their requests second-guessed.

32. In addition to facing sexual harassment and gender discrimination, Plaintiff experienced discrimination on account of her disabilities, which include PTSD, depression, and anxiety.

33. During Plaintiff's employment, there was an emergency situation at work called a "code blue," which caused all employees to run outside. Not knowing whether gunfire was involved, Plaintiff hit under her desk and suffered from an anxiety attack.

34. Once the "code blue" had settled, Plaintiff explained to Ms. Thomas the extent of

her disabilities and asked to go to her physician to get treated. Plaintiff's request was denied, as Ms. Thomas told her it was not okay for her to leave.

35. During this conversation, Ms. Thomas told Plaintiff to "get [her] emotions in check."

36. Due to the extent of her anxiety attack, Plaintiff left work to go to the hospital. She had a blood pressure of 203/154 and an extremely high heart rate. She received an injection to get her blood pressure down.

37. Plaintiff continues to see a medical professional for psychiatric treatment.

38. Maximus has a points system that tracks attendance, with any absences adding a point to a sum total, until a termination number of eight points is reached. Plaintiff ultimately left to have her disability treated and received a point for her "unexcused absence."

39. After Plaintiff left to get treated, Ms. Thomas began referring to Plaintiff as an "emotional being." Over the remainder of her employment, Ms. Thomas would tell Plaintiff that she needed to "get [her] emotions in check," to stop "wearing [her] feelings on your sleeves," and that she is "taking things way too personal."

40. This treatment created a hostile work environment and was discriminatory on the basis of Plaintiff's disability.

41. Maximus and TriWest also have a pattern of discriminating against its employees based on age, extending preferential treatment to employees under the age of 40.

42. By way of example, Maximus and TriWest promote inexperienced younger agents over those that are over 40 and have more experience.

43. Maximus and TriWest ignore the points system for absences as they pertain to employees under the age of 40, but strictly enforce the points system for absences as they pertain

to employees over the age of 40. An employee under the age of 40 had 42 points, far greater than the eight point threshold for termination, but was not terminated. Meanwhile, Plaintiff was terminated with only one attendance point.

44. Employees under age 40 act insubordinately without consequences. One of the agents under Plaintiff's supervision threatened physical harm to Plaintiff and swore at her, but this employee was not terminated, even after Plaintiff reported the activity.

45. Employees under 40 receive preferential payment for hours not worked. Ariana Diop, an employee under the age of 40, received 40 hours of overtime in one week, which did not accurately reflect her hours worked.

46. Chantelle Bell, an employee under the age of 40, had an affair with an agent, Shana-Kay Durrant, also an employee under the agent of 40, and neither employee was reprimanded. To the contrary, Ms. Durrant was later promoted to supervision. Meanwhile, Plaintiff befriended one of her agents based off of a shared experience as a domestic violence victim, and Plaintiff was reprimanded.

47. Plaintiff complained several times to superiors about the discriminatory and harassing treatment she received. She first complained to Ms. Thomas on or around July 12, 2019. Instead of responding to the complaint, Ms. Thomas presented Plaintiff with a disciplinary Final Corrective Action statement with a list of issues that had never before been brought to Plaintiff's attention.

48. Plaintiff also complained to George Reitz, her site manager, about the discriminatory and harassing behavior of her co-workers and superiors. Mr. Reitz called a meeting with Plaintiff and the people about whom Plaintiff complained, which made Plaintiff uncomfortable. Due to her disabilities, she was unable to properly express herself during this

meeting.

49. After the meeting, Mr. Reitz told Plaintiff that she was going to designate a national Maximus Complaint Day, just for her. From then on, he only referred to Plaintiff as "the complainer" rather than use her name.

50. On November 1, 2019, after complaining to Ms. Thomas about Mr. Thomas' behavior, Plaintiff was terminated.

51. Maximus and TriWest indicated that the termination was because Plaintiff swore at an agent. Plaintiff denies swearing at an agent and denied the same to her supervisors. Plaintiff provided witnesses that corroborated that she never swore an agent.

52. Nevertheless, the allegations were not properly investigated, and Plaintiff was terminated. The reason for this termination was pretextual.

53. After her termination, Plaintiff was essentially offered another job with Maximus as a customer service representative, which would represent a substantial demotion from her job as supervisor. Plaintiff declined this demotion.

54. She was contacted by Aerotek for a supervisor position. Maximus provides similar subcontractor work for Aerotek as it does for TriWest. However, once Aerotek found out Plaintiff previously worked for Maximus, Aerotek informed Plaintiff that applications for the supervisor position had closed, even though the position remained available on online portals. Aerotek similarly offered Plaintiff a customer service representative position, which she declined.

55. Plaintiff has been informed that both Anita Thomas and her son, Daniel Thomas, are no longer employed with Maximus or TriWest and were terminated due to misconduct.

## VI. CLAIMS FOR RELIEF

### COUNT I
**Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964,** *as*

*amended*, 42 U.S.C. § 2000e ("Title VII")

56. Plaintiff restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

57. Plaintiff, who is female, is a member of a protected class within the meaning of Title VII.

58. Plaintiff was qualified to hold the position she held.

59. Defendants are covered entities and employers as defined in Title VII in that each is engaged in an industry affecting commerce that has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

60. Plaintiff is a female who was treated less favorably than one or more of her male counterparts.

61. Plaintiff was subjected to consistent sexual harassment that her male counterparts were not subject to.

62. Plaintiff's gender was a factor in Defendants' discriminatory actions, inactions, decisions, retaliation, termination, and/or conduct as alleged herein.

63. Defendants' discriminatory actions, inactions, decisions, retaliation, termination, and/or conduct affected the compensation, terms, conditions, and/or privileges of Plaintiff's employment as described herein.

64. Defendants' discriminatory actions, inactions, decisions, retaliation, termination, and/or conduct deprived Plaintiff of employment opportunities or otherwise adversely affected her status as an employee because of her gender.

65. Defendants' actions, inactions, decisions, retaliation, termination, and/or conduct constituted unlawful employment discrimination against Plaintiff in violation of Title VII.

66. Defendants' actions, and/or inactions occurred by and/or through its agents, servants, and/or employees acting with the course and scope of their employment.

67. Defendants' continuing pattern of offensive conduct permeated the workplace with discriminatory intimidation, ridicule, and insult, and the offensive conduct was severe and pervasive enough to a work environment that a reasonable would consider the workplace intimidating, hostile, or abusive.

68. Defendants and their management were aware of the continuing harassment by Mr. Thomas, yet they failed to take reasonable steps to prevent and/or promptly correct the harassing behavior.

69. Plaintiff took reasonable advantage of the preventative and corrective opportunities available to cease Mr. Thomas' pattern of harassment.

70. As a direct, legal, and proximate result of this discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be proven at trial.

71. Defendants' unlawful actions were intentional, willful, malicious and/or done with reckless disregard to Plaintiff's right to be free from harassment and discrimination based on gender such that she is entitled to an award of punitive damages.

72. Plaintiff is also entitled to her reasonable attorneys' fees and costs of suit.

### COUNT II
### Age Discrimination in Violation of
### The Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA")

73. Plaintiff restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

74. Plaintiff was 47 years old at the time Defendants discriminated against her and

terminated her employment, and therefore is a member of the protected class of age in that she is at least 40 years of age.

75. Defendants are both employers as defined in the ADEA in that each is engaged in an industry affecting commerce that has 20 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

76. Plaintiff was subjected to age discrimination and/or subjected to a hostile work environment at the hands of Defendants and/or Defendants' agents and subordinates, in that Defendants permitted their managers and supervisors to discriminate against her because of her age.

77. Defendants had a pattern of favoring employees under the age of 40 and disfavoring and discriminating against employees over the age of 40.

78. Plaintiff's age was a factor in her discrimination and hostile work environment; all performance issues alleged by Defendants were merely pretext.

79. The age discrimination affected a term, condition, or privilege of Plaintiff's employment because the conduct was continuous, outrageous, humiliating, and unreasonably interfered with Plaintiff's ability to perform the functions of her employment.

80. Although Defendants alleged performance issues, Plaintiff was terminated, at least in part, because of her age.

81. By not taking any action to stop Plaintiff's supervisors from continuing their ongoing discrimination and harassment against Plaintiff, Defendants ratified, authorized, and/or condoned this conduct.

82. Defendants knew of the harassment and pattern of age discrimination, and failed to take appropriate action, or any remedial action whatsoever.

83. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

84. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain and suffering, and related compensatory damages and injuries.

85. As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of liquidated damages in an amount sufficient to punish Defendants or to deter them and other companies from such conduct in the future.

86. Plaintiff is also entitled to her reasonable attorneys' fees and costs of suit

## COUNT III
### Disability Discrimination in Violation of
### The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA")

87. Plaintiff restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

88. Plaintiff is a qualified individual as defined in the ADA in that she was an individual who, with or without reasonable accommodation, could perform the essential functions of her employment as Operations Supervisor.

89. Defendants are covered entities and employers as defined in the ADA in that each is engaged in an industry affecting commerce that has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

90. Plaintiff suffered from post-traumatic stress disorder ("PTSD"), depression, and anxiety while employed by Defendants and continued to suffer pain and limitations through and

including the date of her termination.

91. Plaintiff's PTSD, depression, and anxiety constitute disabilities as defined in the ADA in that they substantially limited one or more of her major life activities. Notably, Plaintiff's anxiety caused panic attacks and made her extremely uncomfortable in certain situations.

92. Plaintiff informed Defendants' personnel of her PTSD, depression, and anxiety and has medical records supporting these conditions.

93. Defendants terminated Plaintiff, relying on pretextual reasons, when in fact Defendants terminated Plaintiff's employment, at least in part, because of her disabilities.

94. Plaintiff's disabilities were a factor in her discrimination and hostile work environment; all performance issues alleged by Defendants were merely pretextual. Defendants harassed Plaintiff until they ultimately terminated her in violation of the ADA.

95. Defendants' discrimination of Plaintiff affected a term, condition, and/or privilege of her employment.

96. Defendants' discrimination of Plaintiff adversely affected her opportunities and status of her employment.

97. Defendants utilize standards, criteria, and/or methods of administration that perpetuate the discrimination of others who are subject to common administrative control.

98. Defendants' discrimination of Plaintiff based on her disabilities denied her employment and benefits.

99. As a direct, legal, and proximate result of this discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

100. Defendants' unlawful actions were intentional, willful, malicious, and/or done with

reckless disregard to Plaintiff's right to be free from discrimination based on her disabilities, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from such conduct in the future.

101. Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## COUNT IV
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964, *as amended* 42 U.S.C. § 2000e-3(a)

102. Plaintiff restates and re-alleges the above paragraphs as fully set forth in this cause of action.

103. Plaintiff reported Mr. Thomas' conduct to her supervisor, Ms. Thomas. Specifically, she told Ms. Thomas that Mr. Thomas had continuously sexually harassed Plaintiff over the course of her employment.

104. When Plaintiff complained about the treatment she was received, Ms. Thomas told her she would take care of it, but ultimately offered no solution or support, and Plaintiff left feeling worse than before.

105. Plaintiff also reported Plaintiff also reported the discriminatory and harassing behavior of her co-workers and superiors to George Reitz, her site manager. Mr. Reitz was dismissive of her complaints, and following Plaintiff's report of discrimination, he only referred to Plaintiff as "the complainer" rather than using her name.

106. Only several days after reporting Mr. Thomas' behavior to Ms. Thomas, Plaintiff was terminated from her employment.

107. Plaintiff was illegally retaliated against for participating in the protected activity of opposing discrimination by Defendants, who took materially adverse actions against Plaintiff as a direct result of Plaintiff's challenge to discrimination.

108. Defendants' adverse actions constitute retaliatory harassment, and their actions were sufficient to frustrate or deter a reasonable person from engaging in protected activity under Title VII.

109. There was a direct causal link between Plaintiff's complaint about Mr. Thomas' sexual harassment and her coworkers' discriminatory and harassing behavior, and the retaliation Plaintiff faced when she was mocked for making reports and ultimately terminated from her employment.

110. Maximus further retaliated against Plaintiff by, after her termination, offering her a position that it knew represented a demotion and then undermining her ability to get a supervisor position with Aerotek.

111. As a direct, legal, and proximate result of this retaliation, Plaintiff has sustained and will continue to sustain, economic and emotional damages in an amount to be proven at trial.

112. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from retaliation that creates an intimidating, offensive, and hostile work environment.

## COUNT V
**Wrongful Discharge**

113. Plaintiff restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

114. Plaintiff and Maximus had an employee/employer relationship. By contracting with Maximus, TriWest financially benefitted from this arrangement and ratified Maximus' conduct.

115. Plaintiff reported to her manager, Ms. Thomas, the inappropriate behavior and sexual harassment of Mr. Thomas.

116. Plaintiff also reported discriminatory and harassing conduct to her site manager,

Mr. Reitz.

117. Defendants terminated Plaintiff's employment because she reported various examples of discrimination pertaining to her gender, age, and disability.

118. Plaintiff expected prolonged employment with Defendants. Because of Defendants' actions, she is unable to continue her employment with Defendants, denying her entitled wages and benefits.

119. Defendants' actions were contrary to public policy. It is the public policy of Missouri that an at-will employee may not be terminated for reporting discrimination to superiors. It is also the public policy of Missouri that an at-will employee may not be terminated for reason of gender, disability, or age.

120. Defendants have a pattern of terminating employees due to their gender, age, or disability.

121. Defendants' actions were intentional, willful, and done with reckless disregard to Plaintiff's protection from termination of the basis of her gender, age, and disabilities. These actions were carried out in a manner warranting punitive damages to punish Defendants' conduct and to deter future conduct by Defendant or others.

122. As a direct, legal, and proximate result of this termination, Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be proven at trial.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including, but not limited to, back pay, lost benefits, front pay, injunctive relief, compensatory damages, punitive damages, liquidated damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other legal and equitable relief as this Court deems just and proper.

## VII. PLAINTIFF'S DEMAND FOR JURY TRIAL

Plaintiff hereby requests and demands a trial by jury on all issues so triable.

## VIII. DESIGNATED PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Missouri as the place of trial in this matter.

Dated: November 11, 2020               Respectfully submitted,

|  | MCINNES LAW LLC<br>By: /s/ Jack McInnes<br>Jack D. McInnes (MO #56904)<br>Benjamin D. Ashworth (MO #67933)<br>1900 West 75th Street, Suite 220<br>Prairie Village, Kansas 66208<br>Telephone: (913) 220-2488<br>Facsimile: (913) 347-7333<br>jack@mcinnes-law.com<br>ben@mcinnes-law.com<br><br>ATTORNEYS FOR PLAINTIFF |