IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JUANITA TUCKER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:20-cv-00902-DGK ) |
| MAXIMUS, INC. and TRIWEST HEALTHCARE ALLIANCE CORP., | ) ) ) |
| Defendants. | ) ) |

**ORDER GRANTING PARTIAL SUMMARY JUDGMENT**

This is an employment discrimination case. Plaintiff Juanita Tucker alleges Defendants Maximus, Inc. ("Maximus") discriminated against her based on her gender, age, and disability, and then unlawfully retaliated against her for reporting sexual harassment in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). Defendants deny the allegations.

Now before the Court is TriWest's motion for summary judgment on all claims against it. ECF No. 60. Holding that TriWest was not Plaintiff's employer for purposes of the applicable discrimination statutes and so cannot be liable, the motion is GRANTED.

**Standard**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court makes this determination by viewing the facts in the light most favorable to the nonmoving

party and drawing all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive summary judgment, the nonmoving party must substantiate her allegations with sufficient probative evidence that would permit a finding in her favor based on more than mere speculation, conjecture, or fantasy. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).

**Material Undisputed Facts**

With respect to the pending motion, the material undisputed facts are as follows.[1]

**TriWest's Relationship with Maximus**

TriWest manages health care for United States veterans as part of its work with the Department of Veterans Affairs. At some point, the record is unclear when, TriWest contracted with TDB Communications ("TDB") to provide call center services to TriWest for the delivery and placement of healthcare for veterans with community care providers. TDB in turn subcontracted with Maximus to do the actual call center work. When TriWest entered into its contract with TDB, it knew that TDB would be subcontracting most of its duties to Maximus.

In the TDB/Maximus contract, Maximus agreed to place phone calls on TriWest's behalf to community health care professionals to schedule medical appointments for veterans, pursuant to TriWest's specifications and models of activity. The scope of work in TDB/Maximus contract largely mirrored the scope of work in the TriWest/TDB contract. For example, the 1:12 supervisor to agent ratio called for in the TDB/Maximus contract was required by the TriWest/TDB contract.

With respect to staffing, the TDB/Maximus contract contained the following requirements:

> **Appointment Scheduling.** After a 60-day initial start-up period, on average, Supplier [Maximus] personnel should be able to schedule twelve (12) appointments in a normal

---

[1] The Court has limited these facts to those that are undisputed and material to the pending summary judgment motion. Excluded are legal conclusions, argument presented as fact, and proposed facts not properly supported by admissible evidence. The Court has also included inferences from undisputed material facts and facts the opposing party has not controverted properly. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). Because the Court is entering summary judgment in TriWest's favor, the Court construes what is a material fact very broadly to include almost all the facts Plaintiff asserts are material.

7.5-hour shift. Supplier shall provide (1) supervisor for every (12) of its personnel performing the Services. Supplier shall audit ten percent (10%) of all scheduled appointments, including the accuracy of documentation and a review of the recorded phone call. All errors shall be corrected by Supplier within twenty-four (24) hours. TriWest will audit a random sample of all completed appointments. Target quality score is ninety percent (90%). When the performance standards have not been achieved, Supplier will submit a written corrective action plan to TriWest within seven (7) business days.

**Provider Outreach.** On average, Supplier personnel should be able to contact four (4) providers per hour. Supplier shall provide (1) supervisor for every (12) of its personnel performing the Services. Supplier shall audit ten percent (10%) of all scheduled appointments, including the accuracy of documentation and a review of the recorded phone call. All errors shall be corrected by Supplier within twenty-four (24) hours. TriWest will audit a random sample of all completed appointments. Target quality score is ninety percent (90%). When the performance standards have not been achieved, Supplier will submit a written corrective action plan to TriWest within seven (7) business days.

The contract also required Maximus to meet with TriWest to calibrate service levels, discuss process improvement opportunities, and generally transfer any knowledge gained through the course of service delivery. The contract further required the Maximus to be compliant with all HIPAA and privacy requirements, perform ongoing training of additional staff beyond initial program implementation, maintain secure access to all systems provided by TriWest, conduct quality assurance audits, and resolve problems. It also required Maximus to conform to all TriWest security rules; attest to running a federal background check on staff hired for the project; and attest to other compliance and security training, because TriWest requires such training before access to its systems.

When customer service representatives and supervisors answered phone calls, they answered as TriWest.

The TDB/Maximus contract also provided that TriWest would provide a variety of services to Maximus to facilitate performance. These services included providing initial training to all Maximus staff assigned to each category of work, supervisors, and quality assurance auditors; providing quality assurance criteria and associated templates; providing desk procedures for each category of work;

3

conducting periodic quality audits; suppling Maximus employees with access to all required systems; and providing "second level" support for all complex questions, issues, or escalations that "first level" Maximus employees could not answer. The contract specified that TriWest would provide trainers to teach Maximus's supervisors how to train others, and that TriWest would make its facilities available to Maximus personnel if access to those facilities was necessary for Maximus to provide services.

The director of the call center where Plaintiff worked had communications with TriWest on a regular basis concerning the metrics that TriWest needed, and how many calls needed to be taken. TriWest and Maximus representatives would meet two to three times a week to go over overall operations, quality, and other items of that nature. During these meetings, TriWest would give feedback about metrics and quality assurance.

Similarly, TriWest's Vice President for Business Support Services spoke almost daily with Maximus representatives. The subject of those communications was overall operation, training, and coordination for training more employees, as well as providing support and reviewing quality, auditing, workforce management aspects, and metrics Maximus was required to follow. These metrics included the length of the call, the quality score on random quality auditing, and speed of answer. In contrast, TriWest had little to no communication with the people at TDB.

Maximus sent its records of employee training to TriWest because the Veterans Administration requires TriWest to document such training. As part of the records TriWest maintains on employees, contractors, and subcontractors who work in call centers, TriWest maintained a record of Plaintiff's start date and end date, her job title, her employee ID, her username, her email address, and her location.

TriWest also maintained call records to generate data points for Maximus' employees, such as the length of time spent on a call and number of calls handled in a day. TriWest provided this information to Maximus but never directed Maximus to take any actions for any particular employee.

Each employee of Maximus was assigned a TriWest e-mail address to facilitate the discussion of protected health information without having to send the communication through a secure website,

not to monitor any employee's work. Maximus supplied its employees with phones and the worksite.

**TriWest's Harassment Policy**

TriWest's stated policy is that it will keep its workplace free from sexual harassment. TriWest also required that workers of subcontractors complete sexual harassment training. With regard to sexual harassment, TriWest defined workforce members as "full- or part-time, current employees, new employees, contractors, consultants, direct-hire temporary employees, and agency temporary employees." TriWest Sexual Harassment/Harassment Policy § III, ECF No. 67-7. TriWest defined its work environment to include the call center where Plaintiff worked. TriWest's policy stated it "[would] not tolerate unlawful harassment of our workforce members by anyone, including any supervisor, co-worker, or third party." *Id*. § IV ¶ 2. TriWest's policy defined harassment as "unwelcome conduct, whether verbal, physical or visual [excluding] coaching, performance improvement discussions, or discipline." *Id*. TriWest's policy defined sexual harassment as including unwelcome sexual advances and

> B. Sexual epithets, jokes, written or verbal references to sexual conduct;
>
> . . .
>
> E. Making or threatening reprisals after a negative response to sexual advances;
>
> . . .
>
> G. Comments about an individual's appearance or body, sexual activity, deficiencies, or prowess;
>
> . . .
>
> J. Leering whistling, sexual gestures, suggestive or insulting comments or physical contact such as patting, pinching, or brushing against another person's body.

*Id*. at § IV ¶ 4.

TriWest's policy was that it may discipline any workforce members who participate in prohibited conduct and that any workforce member who experiences or witnesses conduct harassment must immediately notify their superior. The policy allowed for employees of contractors to contact TriWest's human resources department or a TriWest ethics line as an alternative to the employee's own employer. If an employee of a contractor contacted TriWest with a complaint about harassment that did not occur in TriWest's workplace (something which apparently never happened), TriWest would refer that person to the human resources department of the employer for whom the contractor worked. Maximus employees were not provided with a copy of this policy because TriWest believed Maximus employees were not TriWest employees.

Human resources at TriWest has two categories of employees: Regular Employees, which are those hired directly by TriWest on an at-will basis; and Temporary Workers or Contractors, which are employees of an agency who performs work for TriWest on an at-will basis for a specified period of time.

**Plaintiff's Employment at Maximus**

Plaintiff applied for the position with Maximus through a Maximus portal. It is unclear when Plaintiff was hired, but her employment with Maximus began on June 24, 2019, and ended on November 1, 2019. TriWest had no input into Maximus's decision to hire Plaintiff as a call center supervisor.

Plaintiff worked in Maximus' Kansas City office. Plaintiff received and signed an acknowledgement of access to Maximus' employee handbook and other policies, practices and procedures during her employment with Maximus. She acknowledged it was her obligation to become familiar with Maximus' policies and procedures during her employment with Maximus. Plaintiff had access on Maximus' intranet site to Maximus' policies during her employment, and she acknowledged receiving Maximus' policies. TriWest has its own handbook and policies that apply to TriWest employees, but Maximus' employees, including Plaintiff, did not receive TriWest's handbook or any

6

Case 4:20-cv-00902-DGK   Document 89   Filed 07/28/22   Page 6 of 11

other policies.

Plaintiff was paid through Maximus' payroll and received employment benefits through Maximus.

Plaintiff interacted with one TriWest employee during her employment with Maximus, a trainer named Stacy. Stacy trained Plaintiff on the things she was going to be working on as far as the Veterans, their Medicare and their doctors' needs and their care. She did not train Plaintiff on any human resources functions. Plaintiff, in turn, trained the front-line workers, called "agents," who answered the phones.

Maximus supervised Plaintiff's day-to-day duties and assessed Plaintiff's performance of those duties. Plaintiff complained about mistreatment only to Maximus supervisors and Maximus human resources representatives. Plaintiff requested an accommodation for a health problem from Maximus management. If a Maximus employee tried to raise a complaint about the workplace at Maximus with TriWest, TriWest would have directed the employee back to Maximus for handling.

In October of 2019, an agent named David Thomas made sexual comments to Plaintiff that she was "sexy" and "fly." He also came into Plaintiff's office and blew in her ear and down her neck, then told her he knew how old Plaintiff was, but "age didn't make a difference."

Plaintiff immediately reported the harassment to her supervisor, Anita Thomas. When she spoke to Ms. Thomas, she also referenced that two other agents had reported that Mr. Thomas was sexually harassing them by coming up to them and playing with their hair and touching them, and they did not like it.

Anita Thomas did not relay Plaintiff's report to management. Rather, three days later she drew up paperwork that alluded to an incident three weeks prior and recommended Plaintiff's termination. Plaintiff was terminated shortly thereafter. TriWest had no input into Maximus's decision to terminate Plaintiff.

Plaintiff learned after her termination that David Thomas was Anita Thomas' son.

7

**Discussion**

TriWest argues the undisputed facts demonstrate that Maximus, not TriWest, employed Plaintiff, thus TriWest cannot be liable under either Title VII, the ADA, or the ADEA. Plaintiff responds TriWest could be considered a joint employer of Plaintiff, thus TriWest's summary judgment motion should be denied. After carefully reviewing the record and applicable caselaw, the Court holds TriWest was not her employer even under a joint employer theory and so cannot be liable.

Title VII and the ADA prohibits an employer from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §§ 2000e–2(a)(1), 12112(a). An "employee" is defined as an individual employed by an employer. 42 U.S.C. §§ 2000e(f), 12111(4); *see also Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 489 (8th Cir. 2003) (noting Congress adopted a circular definition of "employee"). Similarly, the ADEA makes it "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

A person may have two or more employers for purposes of suing under Title VII, the ADA, and the ADEA. *See Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928-29 (7th Cir. 2017) (noting "a plaintiff can, under certain limited circumstances," bring a Title VII claim against a defendant who is not her direct employer but has sufficient authority over her to be considered an employer); *see also Hunt v. State of Mo.*, 297 F.3d 735, 742 (8th Cir. 2002) (observing "nothing in the law precludes the possibility that a person may have two or more employers for the same work."). The general common law of agency determines whether an individual is an employee under Title VII, the ADA, or the ADEA. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318,

Case 4:20-cv-00902-DGK   Document 89   Filed 07/28/22   Page 8 of 11

323-25 n.3 (1992); *Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 761 (8th Cir. 2014); *Lerohl*, 322 F.3d at 489; *see also Nischan*, 865 F.3d at 929. Under controlling Eighth Circuit caselaw, the nonexhaustive list of factors to consider in determining whether an individual is an employee includes: the right to control and supervise, as measured by who hires and fires the individual, who assigns work, who controls daily activities; who furnishes equipment; where the work is performed; who pays the worker; who provides employee benefits; how the worker is treated for tax purposes; and whether the worker and the putative joint employer believe that they are creating an employer-employee relationship. *Darden*, 503 U.S. at 323-24; *Alexander*, 768 F.3d at 762; *Lerohl*, 322 F.3d at 489. No single factor is dispositive. *Lerohl*, 322 F.3d at 489. All aspects of the parties' relationship are considered. *Id.* at 490.

In this case, the undisputed facts establish that under Title VII, the ADA, and the ADEA, Plaintiff was an employee of Maximus only because TriWest did not control or supervise Plaintiff in any meaningful way: Maximus recruited Plaintiff through its own portal, interviewed her, and made the decision to hire her and terminate her without any input from TriWest. Plaintiff worked from Maximus' Kansas City office, and Maximus provided her the tools and equipment to perform her job.

Although a TriWest employee named Stacy provided some training to Plaintiff, the training related only to TriWest content, that is, detailed information Plaintiff would need to know about veterans, Medicare, and what information doctors need to have to provide veterans with healthcare. The trainer did not instruct Plaintiff on any human resources functions or resources. This was the only TriWest employee Plaintiff interacted with during her time with Maximus.

Maximus directed Plaintiff's day-to-day duties, set her schedule, and assessed her performance. Maximus paid Plaintiff and offered Plaintiff employment benefits on the same terms it offers other Maximus employees. TriWest never paid Plaintiff, nor did it offer her benefits.

With respect to human resource policies, although TriWest required Maximus to have a non-discrimination policy, Maximus employees did not receive TriWest's handbook or any other policies. Plaintiff's work-related complaints were handled by Maximus without input from any TriWest manager or supervisor. This is consistent with how TriWest treated performance issues it discovered while reviewing randomly audited calls between a Maximus employee and a veteran to ensure quality service. If a call was handled inappropriately, such as if the Maximus employee spoke rudely with a veteran, TriWest forwarded the call to Maximus with suggestions for improvement. TriWest never directed Maximus to take any particular action against any Maximus employees, including Plaintiff.

Granted TriWest maintained certain records on Plaintiff and assigned her a TriWest email address. But it did not do so to exercise control over her in any way. For example, it provided a TriWest email to facilitate the discussion of protected health information through TriWest's secure website. Hence, TriWest did not have the requisite level of control over Plaintiff for her to be jointly employed by both TriWest and Maximus. *See Nischan*, 865 F.3d at 929. The facts in this case are not analogous to those in cases finding joint employment. *See, e.g.*, *Newsom v. Anheuser-Busch Companies, Inc.*, 286 F. Supp. 2d 1063, 1067-68 (E.D. Mo. 2003) (holding defendant Anheuser-Busch's involvement in hiring the plaintiff—which included interviewing her, directing the staffing agency to hire her, and her signing agreements consenting to work under Anheuser-Busch's direction and control—created issue of fact as to joint employment status).

Plaintiff's attempt to survive summary judgment by citing TriWest's sexual harassment policy, which protects contractors and temp agency employees in addition to TriWest employees, is unavailing. TriWest's policy is plainly intended to protect such contractors and temps from harassment by TriWest employees, not protect a Maximus employee from harassment by another

10

Maximus employee. The record makes clear that policing such behavior was Maximus' responsibility, not TriWest's. The record is insufficient to permit a finding of joint employment. Consequently, Plaintiff does not have any viable claims against TriWest.

## Conclusion

For the reasons discussed above, TriWest's motion for summary judgment on all of Plaintiff's claims against it is GRANTED.

**IT IS SO ORDERED.**

Date:  July 28, 2022   /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT